**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| IN RE<br>Douglas Rhoads & Shannon Rhoads,<br><br>Debtors,<br>―――――――――――――――――<br>Douglas Rhoads & Shannon Rhoads, and Ronald Ryan,<br><br>Appellants,<br><br>v.<br><br>JPMorgan Chase, N.A.<br><br>Appellee. | No. CV-12-0508-PHX-DGC<br><br>Adversary No. 2:11-ap-01880 RTB<br>Case No. 2:10-bk-17533 RTB<br><br>**ORDER** |

Appellants Douglas Rhoads and Shannon Rhoads ("the Rhoadses") and their attorney Ronald Ryan (collectively "Appellants") have filed an unopposed "Request for Certification of Direct Appeal to Court of Appeals" of their Chapter 11 Bankruptcy order. Doc. 17-1. Appellants have appealed the final order of the U.S. Bankruptcy Court for the District of Arizona dismissing their adversary complaint with prejudice and awarding attorneys' fees to Appellee JPMorgan Chase, N.A. ("JPMorgan") against both the Rhoadses and Ryan. Doc. 49. This appeal has been fully briefed and neither side has requested oral argument. Docs. 47, 53. For the reasons stated below, the Court will deny Appellants' request for direct appeal to the Court of Appeals, address Appellants' objections on the merits, and grant the appeal in part and deny it in part.

**I.     Background.**

On or about December 17, 2004, the Rhoadses borrowed $2,405,000 from Washington Mutual Bank ("WaMu") as a mortgage loan on a house at 23031 N. Via Venosa, Scottsdale, Arizona (the "Property"). Appellant's Appendix (hereinafter "App.") at 570, Debtors' Adversary Cmpl., ¶¶ 4-5. The Rhoadses entered into an Adjustable Rate Note (the "Note") with WaMu which they secured with a Deed of Trust ("DOT") on the Property. *Id.*; *see* Doc. 48-1 at 14-21 (Note) & 22-46 (DOT). On September 25, 2008, JPMorgan acquired all of WaMu's loans and loan commitments pursuant to a purchase and assumption agreement between JPMorgan and the Federal Deposit Insurance Corporation ("FDIC") as receiver for WaMu. Doc. 48-1 at 48, Aff. of FDIC, ¶ 4.

On June 4, 2010, the Rhoadses filed for Chapter 11 Bankruptcy protection. App. at 4. The schedules the Rhoadses filed with the bankruptcy court stated that they owned the Property, valued at approximately $1,676,000, and that JPMorgan held a first lien on the Property to secure a debt of more than $2,500,000. *Id.* JPMorgan filed a proof of claim listing the approximate debt, inclusive of more than two years of missed payments, late charges, and other fees, as $2,859,608.46. *Id.* at 798-99.

On April 13, 2011, JPMorgan filed a motion for the bankruptcy court to lift its automatic stay so that it could proceed with a non-judicial foreclosure sale of the Property. *Id.* at 772-77. The motion alleged that the Rhoadses had failed to make any payments on their loan since May 1, 2008, and that as holder of the Note endorsed in blank by WaMu it had the right to take action. *Id.*, JPMorgan's Mot. for Relief from Automatic Stay, ¶¶ 4, 7. The Rhoadses objected to the motion, arguing that JPMorgan did not have authority to enforce the Note. App. at 736-51. Following briefing by the parties and a hearing on August 10, 2011, the bankruptcy court granted JPMorgan's motion, allowing that after forty-five days it could commence with foreclosure in accordance with applicable non-bankruptcy laws. *Id.* at 699-700.

On September 6, 2011, the Rhoadses filed a motion for relief from the judgment

terminating the automatic stay. *Id.* at 680-98. JPMorgan opposed the motion, and the bankruptcy court held a hearing on September 28, 2011. *Id.* at 662-72; *see id.* at 558. On October 12, 2011, before the bankruptcy court had ruled on the Rhoadses' motion, JPMorgan filed a notice that a non-judicial foreclosure sale was scheduled to take place on the Property on October 18, 2011. *Id.* at 596.

On October 14, 2011, the Rhoadses filed an adversary complaint challenging JPMorgan's proof of claim (*id.* at 568-595), and on October 17, 2011, they filed an emergency motion for a stay of the noticed October 18 trustee sale. *Id.* at 561-64. The bankruptcy court granted the Rhoadses' motion for a stay pending its ruling on the Rhoadses' motion for relief from its order lifting the stay. *Id.* at 559-60. The bankruptcy court issued that order on November 9, 2011, denying the Rhoadses' motion for relief, which the bankruptcy court construed as a motion for reconsideration. *Id.* at 558.

On November 23, 2011, the Rhoadses filed an emergency motion for a preliminary injunction, seeking, once again, to stop the trustee's sale which had been rescheduled to take place December 20, 2011. *Id.* at 544-49. The motion renewed the Rhoadses' request for relief from the bankruptcy court's order lifting the stay, and it sought approval of a sale of the property to a third party at current market value to satisfy JPMorgan's asserted lien. *Id.* The Rhoadses also filed a motion in the adversary action on November 27, 2011, requesting a modification of JPMorgan's lien to the actual sale price of the Property, approval of a proffered short sale contract, and placement of any sales proceeds into the court pending resolution of the adversary proceeding. *Id.* at 536-43. Following briefing and a hearing on December 13, 2011, the bankruptcy court denied both motions. *Id.* at 15-16; 422, supported by minute entry/order at 423-25.

On November 15, 2011, while litigation proceeded on the above-referenced motions, JPMorgan filed a motion to dismiss the Rhoadses' adversary complaint with prejudice. *Id.* at 550-557. The Rhoadses filed a response (*id.* at 467-543), and the bankruptcy court held a hearing on January 5, 2012. *See id.* at 240-43. On January 12, 2012, the bankruptcy court granted JPMorgan's motion, dismissed the Rhoadses'

complaint with prejudice, and ruled that JPMorgan was entitled to reasonable attorneys' fees from both the Rhoadses and their attorney. *Id.* at 242. The court referenced its earlier orders in which it had granted JPMorgan relief from the stay, denied the Rhoadses' emergency motion for an injunction against lifting the stay and/or enjoining JPMorgan's planned trustee sale, and denied the Rhoadses' motion to approve the short sale of their property. *Id.* at 241-242; *see id.* at 422, supported by Dec. 14, 2011 minute entry/order, 423-425; 558; 699-700.

On January 30, 2012, JPMorgan filed an application for an award of attorneys' fees and a declaration in support, documenting its fees and expenses totaling $8,410.50. *Id.* at 234-39; 224-29. The Rhoadses objected to the bankruptcy court's award of fees against them and their attorney, but did not dispute the amount of fees claimed. *Id.* at 156-223. The Rhoadses also moved for reconsideration of the bankruptcy court's dismissal order. *Id.* After a hearing on April 17, 2012, the bankruptcy court issued an order denying the Rhoadses' motion for reconsideration and finding that JPMorgan's requested amount of attorneys' fees was reasonable. *Id.* at 29-31.

The Rhoadses attempted to appeal the bankruptcy court's January 12, 2012 order dismissing their complaint and awarding JPMorgan attorneys' fees by filing a notice of appeal. Doc. 4, § 1. The Bankruptcy Appellate Council ("BAP") ruled that this order was not a final order for purposes of appeal. *Id.* The Rhoadses then filed a motion for the bankruptcy court to issue a final order of dismissal and again requested reconsideration, this time requesting that the dismissal be made without prejudice and require each party to bear its own costs. App. at 109-115. JPMorgan filed a response in which it did not object to the motion to issue a final order, but objected to reconsideration of any aspect of the order. *Id.* at 105-107. The bankruptcy court issued a final order on May 29, 2012, in which it dismissed the Rhoadses' adversary complaint with prejudice and granted JPMorgan attorneys' fees of $8,481.91, enforceable against the Rhoadses and their counsel. *Id.* at 9-11. This order was supported by the bankruptcy court's earlier minute entries/orders for dismissal and reconsideration. *Id.* at 29-31; *see* January 12,

2012 minute entry/order, *id.* at 240-43; May 4, 2012 minute entry/order, *id.* at 29-31. The Rhoadses appeal the bankruptcy court's final order of May 29, 2012. Doc. 45. They object specifically to (1) the dismissal of their adversary complaint with prejudice, and (2) the award of attorneys' fees against them and their lawyer. *Id.*

**II.     Legal Standard.**

Under 28 U.S.C. § 158(a)(1), the Court has jurisdiction over appeals from "final judgments, orders, and decrees" of bankruptcy judges. Rule 8013 of the Federal Rules of Bankruptcy Procedure states:

> On an appeal the district court . . . may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings. Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses.

The Court reviews the bankruptcy court's conclusions of law *de novo* and its findings of fact for clear error. *In re JTS Corp.*, 617 F.3d 1102, 1109 (9th Cir. 2010). The Court must accept the bankruptcy court's findings of fact unless the Court "is left with the definite and firm conviction that a mistake has been committed[.]" *In re Greene*, 583 F.3d 614, 618 (9th Cir. 2009). The Court reviews the evidence in the light most favorable to the prevailing party. *Lozier v. Auto Owners Ins. Co.*, 951 F.2d 251, 253 (9th Cir. 1991); *In re Jake's Granite Supplies, L.L.C.*, 442 B.R. 694, 699 (D. Ariz. 2010).

**III.    Discussion.**

   **A.     Motion to Certify Direct Appeal to the Court of Appeals.**

Appellants argue that the Court should certify direct appeal to the Ninth Circuit Court of Appeals because the order on appeal involves questions of law for which there is no controlling precedent in this circuit and present matters of public importance. Doc. 17-1 at 3. As shown in the discussion below, the Court does not find that deciding the issues on appeal requires resolution of any unresolved questions of law. The Court will therefore deny Appellants' motion to certify direct appeal.

### B. Dismissal of the Rhoadses' Adversary Complaint.

As set forth in the background section above, this appeal follows a series of attempts by the Rhoadses to prevent JPMorgan's non-judicial foreclosure sale of the Property the Rhoadses originally purchased with a mortgage loan from WaMu. The final order now on appeal incorporates the bankruptcy court's findings of fact and conclusions of law contained in a number of minute entry orders respecting JPMorgan's proof of claim and right to foreclose. The Court will cite to these orders as appropriate when addressing the bankruptcy court's relevant factual and legal findings.

#### 1. The Bankruptcy Courts' Findings.

The bankruptcy court's findings of material fact are as follows. The Rhoadses stated in their original schedules filed with the bankruptcy court that they owned the Property, worth approximately $1,676,000, and that JPMorgan held an undisputed first lien on the Property to secure a debt of more than $2,500,000. App. at 241, January 12, 2012 minute entry/order. JPMorgan is in possession of the Rhoadses' original Note endorsed in blank by WaMu. *Id.*, *id.* at 30, May 4, 2012 minute entry/order. The Rhoadses alleged that the debt may have been paid by third parties, but this allegation is in conflict with their verified statements to the bankruptcy court that they owed the debt, and is not supported by specific allegations of payments by any party. *Id.* at 30, May 4, 2012 minute entry/order.

The bankruptcy court concluded as a matter of law that JPMorgan, as holder of the Note, had the right to enforce the Note and was the proper party to seek relief from the bankruptcy court's automatic stay on foreclosure. *Id.* The bankruptcy court found as a mixed conclusion of fact and law that the Rhoadses had not met the requirements under 11 U.S.C. § 363(f) to force a sale on the Property that would render them free and clear of JPMorgan's lien interest because they did not have the lien holder's consent, and their proposed sale was for less than the lien amount. *Id.* at 424, December 14, 2011 minute entry/order. The bankruptcy court found that dismissal of the Rhoadses' adversary complaint was warranted because the complaint failed to present a cognizable legal

theory or sufficient facts to show that JPMorgan's proof of claim was invalid or that the Rhoadses' acknowledged debt on the Note held by JPMorgan had been paid. *Id.* at 241-42, January 12, 2012 minute entry/order; *id.* at 31, May 4, 2012 minute entry/order.

### 2. Appellants' Objections.

The Rhoadses' appeal is a poorly-organized, rambling recitation of purported legal standards and authorities on foreclosure, replete with references to the actions of "random financial institutions," the "mess" Wall Street has made of the mortgage loan market, and the inability of courts to apply the right laws. To the extent that the Court is able to discern comprehensible objections to the bankruptcy court's findings of fact and law as discussed above, the Court has reviewed these objections and finds them to be without merit.

The Rhoadses argue that the bankruptcy court incorrectly stated that they had conceded that JPMorgan was the holder of the Note. Doc. 45 at 20. But whether or not the Rhoadses expressly made this admission is irrelevant to the Court's review. The bankruptcy court found that JPMorgan was the holder of the Note based on the Rhoadses' own inclusion of the undisputed lien in their bankruptcy schedules and JPMorgan's sworn affidavits. App. at 30; 241. Although the Rhoadses argue that they later sought to amend their bankruptcy schedules to show that JPMorgan's lien interest was disputed (Doc. 53 at 15), this does not make the bankruptcy court's finding of fact clearly erroneous, particularly where JPMorgan filed copies of the original Note and DOT, an authorized representative of the FDIC stated in a sworn declaration that JPMorgan had purchased all of WaMu's loans and loan commitments as of September 25, 2008, and JPMorgan's counsel attested in a sworn declaration to having received from JPMorgan the Rhoadses' collateral file and having inspected the original blue-ink promissory Note endorsed in blank and held by JPMorgan. App. at 241; *see id.* at 805-12; 813-37; 839-41; Doc. 48-1, ¶¶ 2-4.[1]

---

[1] The Rhoadses argue that JPMorgan's proof of claim is not entitled to the presumption of accuracy normally accorded to a properly-filed claim due to a number of

- 7 -

The Rhoadses also argue that being the holder of the Note would not give JPMorgan a valid proof of claim because only the "owner" of the Note has a right to enforce it, and JPMorgan never claimed or showed sufficient evidence that it was the "owner." Doc. 45 at 24-33. The Rhoadses fail to articulate what they mean by this distinction, and its relevance for purposes of their argument is far from clear. The Rhoadses appear to rely on the discussion in *In re Veal*, in which the BAP recognized that under Article 3 of the U.C.C. the "owner" of a note may be a separate entity from the one entitled to collect payments and thereby "enforce" the note. 450 B.R. 897, 909-910 (9th Cir. B.A.P. 2011). This is not a reason for discrediting JPMorgan's proof of claim. As recognized in *Veal*, one way a person obtains the right to enforce a note is to be its "holder." *Id.* at 911; *see* A.R.S. § 47-3301.[2] Under Arizona law, the "holder" is "[t]he person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession." A.R.S. § 47-1201(b)(21)(a); *see also* U.C.C. § 1-201(b)(21)(A); *In re Veal*, 450 B.R. at 911. JPMorgan has produced evidence that it is the holder of the Rhoadses' Note, endorsed in blank and thus payable to bearer. Under the U.C.C. and Arizona law, this is sufficient to show that JPMorgan is entitled to enforce the Note. Accordingly, JPMorgan had the right to file a proof of claim in the Rhoadses' bankruptcy action and to take applicable enforcement actions, including a lawfully-noticed sale of the Property. The bankruptcy court's finding on these issues was not legal error.

---

procedural flaws and irregularities that they identify cryptically in footnotes correlating to various documents in the record. Doc. 45 at 24-25, 25-26, nn. 11-14. The Court need not trace down and address each of these purported reasons for shifting the burden to JPMorgan to show that it has a valid claim. The Court finds the evidence discussed above sufficient to meet this burden, and the Rhoadses have not presented any credible evidence tending to show that JPMorgan's proof of claim is in error.

[2] The holder's right to enforce the note exists even if "the person is not the owner of the instrument or is in wrongful possession of the instrument." A.R.S. § 47-3301. As discussed in *Hogan v. Wash. Mut. Bank, N.A.*, 277 P.3d 781, 784 (Ariz. 2012), Arizona's anti-deficiency statutes protect debtors from double collection where there is any mistake as to the proper party entitled to enforce a note.

The factual analysis in *Veal* further confirms the validity of JPMorgan's proof of claim. Unlike here, *Veal* found that a mortgage servicing company had not shown under the relevant Arizona law and U.C.C. provisions that either it or Wells Fargo Bank, upon whose behalf it filed a proof of claim, held the note and was therefore a "person entitled to enforce the note." 450 B.R. at 920. *Veal* opined that a person in possession of a properly endorsed note would be "a person entitled to enforce the note." *Id.* at 911. The BAP went on to clarify that Article 9, rather than Article 3, governs transfers of ownership and who has a proprietary interest in a note, but such transfers or ultimate proprietary interests, which may confer separate obligations on the note-holder, do not affect the note-maker's obligation to make payments to the party entitled to enforce the note. *Id.* at 912, n. 27. The BAP opined that it is irrelevant for purposes of the note maker's obligation to pay the holder whether the ownership interest in the note has been fractionalized or securitized or otherwise transferred, "so long as [the debtors] know the identity of the 'person entitled to enforce' the Note." *Id.* at 912.

In light of these findings, the Rhoadses' assertion that JPMorgan is not entitled to enforce the Note and that it "was owed no money by Rhoads" (Doc. 45 at 24) is wholly unconvincing. This assertion appears to rest largely on allegations that JPMorgan failed to demonstrate compliance with the requirements of Article 9, which, as noted above, governs transfers in ownership and ultimate proprietary interests, but has no bearing on the validity of JPMorgan's proof of claim as the Note holder. The Rhoadses also allege that documents related to JPMorgan's purchase of WaMu's assets do not specify the loan interests transferred to JPMorgan and that WaMu securitized its mortgages before it went into receivership and therefore had no ownership interest left to transfer. Doc. 45 at 27-31. These allegations, taken as true, are insufficient to invalidate JPMorgan's proof of claim. The fact that documents related to JPMorgan's purchase of WaMu's assets do not specify the individual loan interests sold does not mean that JPMorgan's proof of claim is invalid. JPMorgan has produced evidence that it purchased all of WaMu's loan commitments and it has physical possession of the Note the Rhoadses negotiated with

1 WaMu. This evidence, seen in a light most favorable to the prevailing party, amply demonstrates that JPMorgan is entitled to enforce the Note. Additionally, the Rhoadses have cited no credible authority for the proposition that fractionalization of ultimate ownership interests through securitization of a mortgage precludes further transfers of a note or terminates either the obligation of the note maker to make payments to the note holder or the rights of the note holder to enforce this obligation. *Veal*, as well as the above-cited references to Arizona law, supports the opposite conclusion.[3]

The Rhoadses' reliance on *Hogan v. Wash. Mut. Bank, N.A.*, 277 P.3d 781, 784 (Ariz. 2012), is also misplaced. *See* Doc. 45 at 33-34. The Arizona Supreme Court did not find, as the Rhoadses appear to assert, that being the holder of the note is insufficient for purposes of making a bankruptcy claim. *See id.* Rather, the court found that being in physical possession of a note is not required for commencing a valid foreclosure under Arizona's foreclosure statutes. *Hogan* simply has no relevance here where the holder of the Note – both for purposes of JPMorgan's proof of claim and its right to commence foreclosure – is not plausibly in dispute. The bankruptcy court correctly determined that the Rhoadses' challenges to the validity of JPMorgan's proof of claim, like their challenges to lifting the stay on foreclosure, fail as a matter of law.

The bankruptcy court also correctly determined that the Rhoadses failed to state a claim that their outstanding mortgage debt had been satisfied. The Rhoadses alleged in their complaint that unspecified payments from various sources, such as Credit Default Seller or Swap ("CDS") payments, plus unspecified payments made by the Rhoadses themselves, "exceed[ed] the amount of [their] obligation" so that "nothing is owed on the loan." App. at 22-23, ¶¶ 2-3. The Rhoadses provided no further factual allegations respecting their own hypothetical payments or the apparently unsolicited payments of third parties to support their bald assertion that the outstanding debt – acknowledged to

---

[3] The Court finds the Rhoadses' recitations to portions of "Max Gardner's Bankruptcy Bootcamp," alleging an overall lack of proper assignments during securitizations, both unpersuasive and irrelevant to the issue of whether JPMorgan was entitled to enforce the Note. *See* Doc. 45 at 31-32;

- 10 -

be in excess of $2.5 million – was somehow discharged in full. Although, for purposes of a motion to dismiss, courts must take all well-pled factual allegations as true, *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009), the complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Rhoadses do not come close to meeting the plausibility standard and its requirement of more than the "mere possibility" that the assertions made in the complaint are true. *Id.* at 556. The bankruptcy court correctly found that "[f]ar more than a general allegation that some entity, somewhere paid their admitted debt is necessary." App. at 31.

The bankruptcy court also did not err in dismissing the Rhoadses complaint with prejudice. Rule 15 of the Federal Rules of Civil Procedure declares that courts should "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). Justice does not require granting leave where the Rhoadses' assertions of payment in full are not only highly implausible but actually in conflict with their own earlier representations of outstanding debt, particularly when there has been no further factual development to support this change in position other than the impending sale of the Property. The Rhoadses argue that the payments they averred were not merely hypothetical (Doc. 53 at 12), but their support for this position evaporates under the barest scrutiny. The Rhoadses point first to the response given by their attorney under questioning from the bankruptcy court that their claim was based on "miscellaneous payments of a variety of types" with the focus on "credit default swap payments." App. at 97:18-98:5. Elsewhere, they identify a long list of additional types of payments, including TARP funds and U.S. Department of Treasury loans or gifts, that may have applied (*id.* at 747:18-748:7, 747, n. 2), as well as available provisions for entering into CDS contracts (*id.* at 595, Exhs. L & M). These citations add no specificity to the allegations that the bankruptcy court found too general and hypothetical to support the claim that millions of dollars in outstanding debt had been paid by "some entity, somewhere." App. at 31. Because the Rhoadses' provided no basis upon which to conclude that an amendment

could cure the fatal deficiencies of their complaint, dismissal with prejudice was warranted. *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (leave to amend may be denied if the amendment would be futile).[4]

### C. Award of Attorneys' Fees.

The Rhoadses and their attorney Ronald Ryan appeal the award of attorneys' fees. They dispute the appropriateness of awarding fees, not the amount of fees awarded.

The bankruptcy court did not explicitly set forth findings of fact and law to support its grant of attorneys' fees. The January 12, 2012 minute entry/order and the May 4, 2012 minute entry/order that the bankruptcy court incorporated into the May 29, 2012 order now on appeal merely found in favor of JPMorgan and stated, respectively, that "defendant is entitled to its reasonable attorneys [fees] from both plaintiffs and their attorney," and that JPMorgan was entitled to recover its reasonable fees "under both the loan documents and state law." App. at 31, 242.

JPMorgan presents two alternative bases under state law to support the award, only the second of which expressly supports an award of fees against a party's attorney. Doc. 47 at 19-20. A.R.S. § 12-341.01(A) provides that "[i]n any contested action arising out of a contract, express or implied, the court may award the successful party reasonable attorney fees." Doc. 47 at 20. A.R.S. § 12-349(A) provides that "the court shall assess reasonable attorney fees, expenses and, at the court's discretion, double damages of not to exceed five thousand dollars against an attorney or party . . . if the attorney or party does any of the following:

> 1. Brings or defends a claim without substantial justification.

---

[4] JPMorgan argued that the appeal should alternatively be denied because (1) it has been made moot by a properly-conducted trustee sale of the Property, and under A.R.S. § 33-811(C) the Rhoadses have waived all defenses and objections to that sale, (2) *res judicata* applies to the bankruptcy court's earlier orders lifting the automatic stay and denying reconsideration and therefore bars the Rhoadses' claims in their adversary complaint, and (3) judicial estoppel bars the Rhoadses from taking a different position in their complaint than they took in their previously-filed bankruptcy schedules. Doc. 47 at 14-16. Because the Court has found that dismissal of the adversary complaint with prejudice was justified on the merits, the Court will not address these alternative reasons for denying the Rhoadses' appeal.

> 2. Brings or defends a claim solely or primarily for delay or harassment.
>
> 3. Unreasonably expands or delays the proceeding.
>
> 4. Engages in abuse of discovery.

Ariz. Rev. S. § 12-349(A). Awards made pursuant to this provision may be allocated against the offending party and their attorney jointly or severally or by an assessment of separate amounts. *Id.* at § 12-349(B).

The Court finds, and Appellants do not dispute, that § 12-341.01(A) supports JPMorgan's claim to fees against the Rhoadses to the extent that JPMorgan was the successful party. Because the bankruptcy court clearly found that JPMorgan was the prevailing party, the Court finds that is was not legal error to award reasonable attorneys' fees to JPMorgan and against the Rhoadses.

Whether and to what extent JPMorgan is entitled to recover fees from the Rhoadses' attorney is a closer call and requires further findings of fact and law from the bankruptcy court. Although the facts and circumstances of this case may, as JPMorgan argues, support a finding under § 12-349(A) that the Rhoadses and their attorney filed this action without substantial justification, did so for the purpose of delay, and unreasonably delayed the proceedings in both the bankruptcy action and the adversary action (Doc. 20-21), the bankruptcy court did not make these findings or otherwise explain its legal basis for awarding fees against Mr. Ryan. The trial court was required to set forth specific reasons for the award that would aid the appellate court on review. *See, e.g.*, *Bennett v. Baxter Group, Inc.*, 224 P.3d 230, 237 (Ariz. App. 2010). The court will remand to the bankruptcy court to determine on what basis and to what extent an award of fees applies to Mr. Ryan.

**IT IS ORDERED:**

1. The "Request for Certification of Direct Appeal to Court of Appeals" (Doc. 17-1) is **denied**.

2. Appellants' appeal (Doc. 47) is **denied in part** as to their objections to

1  bankruptcy court's dismissal with prejudice of the Rhoadses' adversary complaint and
2  award of attorneys' fees against Douglas Rhoads and Shannon Rhoads, and **granted in**
3  **part** as to the bankruptcy court's award of attorneys' fees against Ronald Ryan.

4  3. This action is **remanded** to the bankruptcy court for further consideration
5  of the award of attorneys' fees against Ronald Ryan as set forth above.

6  Dated this 26th day of February, 2013.

David G. Campbell
United States District Judge